UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SAMUEL BAGJETT**, <br><br> Plaintiff, <br><br> vs. <br><br> **GENESEE COUNTY SHERIFF'S DEPUTY JACOB BILANOW, et al.** <br><br> Defendants. | 2:18-CV-10544-TGB <br><br><br> **ORDER GRANTING DEFENDANT GENESEE COUNTY'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendant Genesee County's motion for summary judgment. ECF No. 27. For the reasons stated herein, the Court will **GRANT** Defendant Genesee County's motion and **DISMISS WITH PREJUDICE** Defendant Genesee County.

## I. Facts and Procedural History

While driving his father's car, Plaintiff Samuel Bagjett was pulled over by a police officer for a routine traffic stop. Police Report, ECF No. 27-2. Plaintiff was arrested and taken to the Flint City lockup for processing before being taken to the Genesee County Jail. Plaintiff alleges he arrived at the Flint City Lockup at approximately 2:30 am. Complaint, ECF No.1, PageID.4.

As part of processing, Plaintiff was taken to a cell to be strip-searched. Plaintiff alleges that at the time he was asked to "bend over and spread his buttocks," Defendants Genesee County Sheriffs' Deputies began to laugh at him and mock him. *Id.* After additional deputies arrived, Plaintiff alleges that he was given a jumpsuit to put on, which ripped in the crotch, exposing his genitalia. *Id.* Plaintiff claims that he was removed from the cell and then grabbed by the officers. *Id.* One officer grabbed his left leg while another grabbed his left arm; Plaintiff was forced to hop on one leg down the hall with his genitalia exposed. *Id.* Plaintiff then claims that the officers became agitated without reason and slammed Plaintiff to the ground on the stomach, even though he was not resisting and not combative. *Id.* Plaintiff alleges he was "repeatedly kicked, punched, hit, verbally assaulted and drug out of the POD striking [his] head on the door." *Id.* at PageID.5. Further, Plaintiff asserts that while he was being beaten, Plaintiff stated, "that's all you got," and the deputy Defendants began choking him and then deployed a TASER on his spine at least three or four times. *Id.* He claims he was in and out of consciousness during the assault and that officers yelled at him to stop resisting during that time. *Id.*[1]

---

[1] Portions of the incident are captured on video from the jail. *See* ECF No. 31. The Court reserves analysis of this video for a later date, as the parties agree for purposes of the current motion that genuine issues of material fact exist regarding whether the individual officers acted with excessive force.

Plaintiff was eventually secured and brought to a solitary cell. *Id.* He states that once in the cell, his eye swelled shut, that he was bleeding profusely from his nose, had lacerations and abrasions, and was in excruciating pain. *Id.* Plaintiff alleges he was denied immediate medical care; when he was eventually seen by a facility nurse at approximately 4:00 a.m., she told him he needed to be taken to a hospital immediately but was not taken to a hospital for medical care until approximately 7:00 a.m., following a shift change. *Id.* at PageID.6.[2] At the hospital, Plaintiff was diagnosed with a concussion, multiple thoracic spine fractures, a nasal bone fracture, a conjunctival hemorrhage, other visual disturbances, and pain in his right shoulder. *See* ECF No. 27-6.

Plaintiff then brought the underlying lawsuit against seven Genesee County Sheriff Deputies in their individual capacities and Genesee County. Now, Genesee County moves for summary judgment as to Count I[3] alone, the only Count leveled against it: "Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision of the Fourth and Fourteenth Amendments." ECF No. 1, PageID.9-11; ECF No. 27, PageID.165. The parties have agreed to dismissal of Count II: Gross Negligence, Willful, and Wanton

---

[2] During his deposition, Plaintiff testified that he was offered immediate medical care, but he refused. ECF No. 27-3, PageID.358-59.

[3] Plaintiff's numbering of the claims in the Complaint is out of sequence because he skips a number so that the succeeding count numbers are incorrect. The Court refers to them here as if they had been numbered correctly.

Misconduct, Intentional Infliction of Emotional Distress (ECF No. 1, PageID.11-12), as well as Count IV: Res Ipsa Loquitur (*Id.* at PageID.14-15).[4] Count III: Deprivation of Liberty Without Due Process of Law is not at issue in this motion. *Id.* at PageID.12-14.

## II. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

---

[4] At oral argument on this motion, counsel stated that they would file a stipulated order dismissing these claims. The parties are hereby **ORDERED** to submit a stipulated order dismissing Counts II and IV within 14 days of the date of this Order.

U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### III. Analysis

**A.   Whether Genesee County availed itself to the jurisdiction of the Court**

The Court must first consider whether Genesee County was properly served because "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)). "And in the absence of personal jurisdiction, a federal court

is 'powerless to proceed to an adjudication.'" *Id.* (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).

Federal Rule of Civil Procedure 4(j)(2) governs the service of a municipality:

> (2) **State or Local Government.** A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
> (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Here, Plaintiff sued seven Genesee County Sheriff Deputies in their individual capacities and Genesee County, a municipal corporation. Summonses were addressed to the individual deputies and accepted by a Genesee County Sheriffs' Captain who was designated to accept service of process on behalf of Genesee County Sheriffs' Department Deputies. *See* ECF Nos. 3-8. A summons was neither issued nor returned executed for Genesee County as a municipal corporation. *See* ECF No. 2. However, an appearance of counsel was made on behalf of all Defendants, including Genesee County. *See* ECF No. 9.

Plaintiff concedes that Genesee County was not properly served, but instead argues that Genesee County has appeared through counsel, and effectively acknowledged the jurisdiction of the court by taking an active part in this litigation and engaging in various forms of discovery, including: answering interrogatories and requests for production, listing

6

themselves as a party in Defendants' Rule 26(a)(2)(B) disclosures, and sending a representative to all depositions taken in the case. ECF No. 29-4 (Answers to Interrogatories); ECF No. 29-45 (Rule 26(a)(2)(B) disclosures) But a defendant's "full awareness that [it] had been sued makes no legal difference to the question [of] whether he was properly served." *King*, 694 F.3d at 655-56. Defendant contends that Genesee County has had only minimal participation in the litigation that is not sufficient to show that it availed itself to the Court. ECF No. 30, PageID.1020-21.

This issue was discussed in *King v. Taylor*, where the Court examined three ways that a defendant may waive their right to challenge service of process. 694 F.3d at 656. First, a defendant can waive a defense to service by filing a motion under Rule 12 but failing to raise in that motion the defense of insufficient service of process. 694 F.3d at 656. Genesee County did not file a motion to dismiss of any kind. *Id.* If a defendant does not initially file a motion to dismiss, it is permitted under Rule 12(h) to preserve a service defense by including it in its answer. 694 F.3d at 657. An answer was filed in this case; however, it expressly states that it is on behalf of the individual deputies and does not list Genesee County as an answering defendant. ECF No. 10. Moreover, the joint discovery plan filed by the parties, expressly lists Mr. Guss as counsel for deputies Bilanow, Howard, Rule, Eckert, Broader and Chene. It does not list Genesee County as a defendant. *See* ECF No. 12. Further still, the

7

witness and exhibit lists filed by Defendants, expressly states that they are being offered by the Genesee County Sheriff Deputies, not the County as a defendant. *See* ECF No. 21. Indeed, a review of the docket demonstrates that Genesee County never filed any document with the Court before the present motion for summary judgment. And any filing by Defendants in this case has expressly stated that the document was being filed on behalf of the Genesee County Deputies only. Only one filing by Defendants acknowledges the presence of Genesee County as a defendant: the notice of appearance by Mr. Guss on behalf of "all defendants." ECF No. 9.

Nonetheless, a defendant may "forfeit his service defense through his extensive participation in the litigation." *King*, 694 F.3d at 658. This is so regardless of whether a defendant has properly preserved the defense under Rule 12(b). *Id.* To be sure, "[a] defendant is 'required at some point to raise the issue by motion for the court's determination.' Waiting too long to do so can forfeit the defense." *King*, 694 F.3d at 658 (quoting *Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985)) (internal citation omitted). The Court must consider "all of the relevant circumstances" to determine whether "the defense has given the plaintiff 'a reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found

lacking.'" 694 F.3d at 659 (quoting *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011).

The record contains the following evidence of "voluntary, active and extensive participation in the litigation" as discussed in *King*:

- Evidence that Genesee County sent answers to Plaintiff's first set of interrogatories and request for production of documents. ECF No. 29-3. However, this answer was filed by Harvey Kruse, P.C. attorneys Mr. Guss, Mr. Brent Scott, and Mr. William Clos as attorneys for Defendant Deputies Bilanow, Howard, Rule, Eckert, Broder, and Chene, not as attorneys for Defendant Genesee County.

- Evidence that Genesee County sent answers to Plaintiff's request for production of documents. ECF No. 29-4. But again, the answers were submitted by counsel only on behalf of the individual Genesee County Deputy Defendants.

- Evidence that Genesee County sent Plaintiff Rule 26(a)(2)(B) disclosures to Plaintiff "by and through its attorneys, Harvey Kruse, P.C." ECF No. 29-5.

- Evidence that attorney Michael Guss made appearances at Plaintiff's deposition on behalf of *all* defendants. ECF No. 27-3, PageID.197.

- Evidence that the same law firm was assuming representation of all of the Defendants, including Genesee County. ECF No. 9.

Considering all of this evidence in its totality, it is sufficient to demonstrate that Genesee County can be said to have "[v]oluntarily participat[ed] in full discovery on the merits." *King*, 694 F.3d at 660. As was the case for the defendant in *King*, Genesee County has been

"completely silent about [its service defense] until the summary judgment stage," and during the interim period Genesee County gave Plaintiff a reasonable expectation that Genesee County was going to defend the suit. 694 F.3d at 660.

Therefore, although Genesee County was not properly served in this case, the County "has given the plaintiff a reasonable expectation that the defendant will defend the suit on the merits." 694 F.3d at 659. The County's motion for summary judgment in its favor will not be granted based on inadequate service of process and the Court concludes that the County has submitted itself to the Court's jurisdiction.

## B.  Plaintiff has failed to create a genuine issue of material fact as to Genesee County's liability under *Monell*

A municipality can be held liable under § 1983 where it is shown that a municipal custom or policy is the driving force behind an alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) Under *Monell*, Genesee County cannot be found liable unless Plaintiff can establish that an officially executed policy, or the toleration of a policy within the Sheriff's Office leads to, causes, or results in the deprivation of a constitutionally protected right.[5] *Doe v. Claiborne Cty.*,

---

[5] As Defendant Genesee County only moves for summary judgment on the *Monell* claim, and because the Court finds that Plaintiff cannot establish a pattern of inactivity to support his *Monell* claim, the Court need not discern, at this time, whether the deprivation of a constitutionally protected right actually occurred. Indeed, at the hearing on Plaintiff's motion, Defense counsel conceded that genuine issues of material fact existed as to whether excessive force occurred.

103 F.3d 495, 507 (6th Cir. 1996). "A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe*, 103 F.3d at 507 (quoting *Monell*, 436 U.S. at 691).

In addition to showing a custom, Bagjett must also show that Genesee County as an entity "caused" the constitutional violation by showing "a direct causal link between the custom and the constitutional deprivation; that is, [he] must 'show that the particular injury was incurred *because* of the execution of that policy.'" *Doe*, 103 F.3d at 508 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)) (emphasis in original). That custom or policy may be a failure to act. *Doe*, 103 F.3d at 508. Called the "inaction theory," a plaintiff alleging that a custom of inaction caused her injury must establish:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (alterations in original) (citing *Doe*, 103 F.3d at 508). "The evidence must show that the need to act is so obvious that [Genesee County's] 'conscious'

decision not to act can be said to amount to a 'policy' of deliberate indifference to [Bagjett's] constitutional rights." *Doe*, 103 F.3d at 508 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to excessive force" of the kind Plaintiff alleges he experienced." *Doe*, 103 F.3d at 508. "[T]he failure to present sufficient evidence to establish the existence of a policy of inaction ends the inquiry," and the Court need not consider whether, if such a custom had been established, the inaction of Genesee County would have amounted to deliberate indifference. *Doe*, 103 F.3d at 508.

Here, Plaintiff has not identified a custom or policy of Genesee County that caused his injuries. First, the *Monell* claim in the complaint is framed as alleging a pattern or practice of deliberate indifference to serious medical needs[6] – nothing in Count 1 alleges a pattern or practice of excessive force. ECF No. 1, PageID.9-11. Plaintiff *does not allege* in his complaint that Genesee County engages in a pattern or practice of excessive force or that the County's excessive force training and

---

[6] Plaintiff has apparently abandoned his *Monell* claim alleging a pattern or practice of deliberate indifference to serious medical needs. His response to Defendant's motion does not address deliberate indifference to serious medical needs, nor did Plaintiff's counsel discuss it at Defendant's hearing. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted).

supervision is insufficient. *Id.* Plaintiff appears to suggest that he can raise an argument different from what he alleges as a pattern or practice in his Complaint, and instead allege something entirely new. At the hearing on Defendant's motion, Plaintiff asserted that he identified the County's custom or policy in paragraphs 34 and 63 of his Complaint. However, neither paragraph identifies any particular custom, policy or procedure. *See* ECF No. 1, PageID.7-8, 14

That aside, Plaintiff asserts in his response to Defendant's motion that the Genesee County Sherriff's Department has a clear and persistent pattern of excessive force. ECF No. 29, PageID.912. But in support of his claim of a pattern of inaction regarding excessive force, all Plaintiff offers is a bullet-point list of six other cases that have either settled or gone to trial against Genesee County and individual deputies in the Eastern District of Michigan in which the allegations were excessive force in the form of pepper spray, mace, and other unidentified excessive force. *Id.* at PageID.912-14. In the list, Plaintiff provides the case number, the presiding judge, and a one-sentence summary of the factual allegations made in the case. In one instance, Plaintiff provides the jury's award after a verdict, but otherwise does not explain the disposition of the case or any factual findings the court made in the case. Further, Plaintiff does not explain whether he questioned anyone in depositions about such a policy of inaction nor does he cite to particular portions of the record showing as much.

13

> Under Federal Rule of Civil Procedure 56(c)(1)(A):
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular materials in the record, including depositions, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

In failing to cite to any portions of the record that might indicate deliberate indifference to an unwritten policy or custom of excessive force, Plaintiff's response falls short.

And the list of cases provided by Plaintiff is similarly insufficient. To connect these cases to Plaintiff's allegations, Plaintiff states "[t]hese cases all show similar fact patterns, in which pre-trial detainees and prisoners are subjected to excessive force and pepper spray while not resisting the officers' commands and then beaten and slammed into the ground and walls. This long history shows a custom or policy for this specific type of abuse." ECF No. 29, PageID.914. While this alludes to "a policy of inadequate training or supervision," which is an actionable theory of municipal liability, *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005), "the focus must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform" *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

It is not uncommon for plaintiffs bringing *Monell* claims to rely on other allegations of excessive force at the same correctional facility or by the same police force as evidence of an unwritten policy or custom of

inaction. For example, *Thomas v. City of Chattanooga* concerned a plaintiff bringing a *Monell* claim against the City of Chattanooga following an officer-involved shooting in Thomas' home that left Thomas partially disabled. 398 F.3d 426, 427-28 (6th Cir. 2005). Thomas asserted that the City "had an unwritten policy, practice or custom of condoning the use of force against potential suspects." *Id.* at 429. The City moved to dismiss Thomas' claim, arguing that he had failed to create a genuine issue of material fact indicating the police department had such an unwritten policy. *Id.*

The City provided evidence in the form of three affidavits from a sergeant with the Internal Affairs Division, a captain in charge of the police department's training division, and an individual who managed the accreditations and standards for the police department. *Id.* at 429-30. These affidavits explained that the individual officer involved in the shooting did not have any complaints of excessive force in his file, that the officer received proper training on using deadly force, and that the police department did not authorize or condone any policy, custom, or practice allowing officers to use excessive force on potential suspects. *Id.* To rebut this, the plaintiff presented affidavits from an expert witness who stated that "[b]ased on [his] experience with other cities in similar cases similar to this one, *the number of formal civil cases alleging use of excessive force* by police officers filed against the City of Chattanooga indicates that . . . Chattanooga Police Department uniformed officers

15

acted within an informal, unwritten policy, practice or custom wherein the unlawful use of excessive force was tolerated." *Id.* at 430. A second affidavit from the witness "added that he had reviewed statistical evidence, consisting of some of the complaints and civil cover sheets from the forty-five suits filed against the Chattanooga Police Department alleging excessive force since July of 1994" but clarified that he had not reviewed the cases beyond "merely looking at the complaints." *Id.* The witness "essentially argued that there must have been a policy or custom of condoning excessive force in the Chattanooga Police Department because there had been several complaints of excessive force against the Department in the past, and because here, in [the witness's] opinion, [the] officer . . . had violated the Department's written 'use of force' policy and yet his actions were deemed justified by the Department." *Id.*

The Sixth Circuit held that the witness' opinion that the police department must have had an unwritten policy condoning excessive force based on the mere number of complaints filed against it was insufficient to create a genuine issue of material fact on which a jury could find that a policy existed. It agreed with the district court that the witness's opinion was conclusory "because he did not explain how he drew his conclusions from the list of complaints made against the Department." *Id.* at 431. This was because the conduct alleged in the civil complaints ranged in severity, and the witness failed to inform the court as to whether the complaints were serious or frivolous, or how the number of

complaints alone could permit a fact finder to conclude anything about the police department's use of force policies. *Id.* at 430-31.

*Thomas* distinguished *Leach v. Shelby County Sheriff*, 891 F.3d 1241 (6th Cir. 1989), where the Sixth Circuit concluded that the plaintiff had provided sufficient evidence of a custom, policy or practice of excessive force. In *Leach*, the plaintiff, a paraplegic, brought a *Monell* claim against a county jail, alleging that the sheriff failed to supervise his employees adequately when he knew or should have known that inmates like the plaintiff were likely to receive inadequate care. 891 F.3d at 1247. Following a bench trial, the court found that "there was evidence of numerous instances of abuse of paraplegic or physically infirm inmates." *Id.* While it is unclear from the Sixth Circuit's opinion whether two other paraplegic prisoners testified at trial, the district court concluded that two named prisoners "were provided inadequate care and substandard treatment." *Id.* A medical corpsman also "testified that the same type of treatment provided [Leach] . . . was provided to at least 14 other paraplegics since the new jail was opened." *Id.* The Sixth Circuit concluded that those findings were adequately supported by the record and "was convinced that the municipality had a policy of deliberate indifference to prisoners' medical needs based on the fact that there were several separate instances where the prison failed to investigate prisoner mistreatment." *Thomas*, 398 F.3d at 434 (citing *Leach*, 891 F.2d at 1246-48 (noting that the lower court found that 'at least 14 other paraplegics

17

had received similar deplorable treatment")). "Unlike the plaintiffs in *Leach*, appellants [in *Thomas* had] failed to show several separate instances of the alleged rights violations." 398 F.3d at 434.

Here, Plaintiff contends that, as in *Leach*, "[t]he County is or should be aware of these complaints filed against their deputies and therefore they are aware of the pattern, yet here we are once again under the same set of circumstances, with another prisoner who has been physically assaulted by the guards without justification." ECF No. 29, PageID.915. But these other cases cited by Plaintiff allegedly involve the use of pepper spray, mace, or some other unidentified use of force at the Genesee County Jail. *Id.* at PageID.913-14. And as Genesee County pointed out at the hearing, the cited cases involve allegations at the main jail (the "Genesee County Jail"), not the Flint City lockup, where this incident occurred. While Plaintiff claims that some of these listed cases involve some of the named Defendants here, in the instant case Plaintiff alleges excessive force in the form of kicking, punching, hitting, and several deployments of a TASER, not pepper spray. ECF No. 1, PageID.5. It is unclear why Plaintiff believes that an alleged pattern of excessive force via pepper spray, even by some of the same Defendants supports his case.

Further, Plaintiff has not explained how the prior instances of alleged excessive force from the list of lawsuits may properly be considered as part of the record that is before the Court. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely

18

disputed *must* support the assertion by . . . *citing* to particular parts of material *in the record*[.]"). Plaintiff does not argue that he raised these lawsuits in questioning any deposition witness or cite to any such testimony. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). When asked at the hearing on Defendant's motion whether any witnesses had been confronted with or questioned about this alleged pattern of inaction, Plaintiff's counsel stated she did not know because she did not conduct the depositions. Regardless of whether any questioning took place, Plaintiff's failure to support its argument with any evidence means that it cannot raise a genuine issue of fact. *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 774 (E.D. Mich. 2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones.") (quoting *Meridia Prods. Liab. Lit. v. Abbot Labs.*, 447 F.3d 861, 868 (6th Cir. 2006)).

Moreover, this Court has squarely considered this issue and concludes that under the holding of *Thomas*, merely listing other cases alleging similar complaints against the municipal entity is insufficient to create a genuine issue of material fact on which a jury could find that such a policy exists. See also *Lucier v. City of Ecorse*, No. 12-12110, 2014 WL 1260651, at *31 (E.D. Mich. Mar. 27, 2014) (Borman, J.), aff'd 601 F. App'x 372 (6th Cir. 2015). As Judge Borman explained in *Lucier*:

19

In this case, Plaintiff provides insufficient evidence to support the "pattern" aspect of his claim, simply referring to three or four cases that Plaintiff claims involve allegations (the specifics of which are not disclosed) of excessive force against some of the Defendants in this case, one of which resulted in a consent judgment, one of which was dismissed in the officer's favor on summary judgment, one of which is still in the summary judgment stages and one which is allegedly "to be filed." "A custom of tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims. *Burgess*, 735 F.3d at 478 (citing *Thomas*). Even if Plaintiff could establish that the City failed to investigate Plaintiff's allegations of excessive force in this case, he simply has failed to demonstrate a pattern of inadequate investigation of similar claims. *Id.* ("Although Plaintiffs claim that [the chief] should have done more in his investigation of the takedown and treatment provided to Burgess, as in *Thomas*, they simply have not demonstrated a pattern of inadequate investigation of similar claims as required.").

2014 WL 1260651, at *31. As in *Lucier*, Plaintiff here has failed to demonstrate a pattern of excessive force with respect to use of the TASER and takedown procedures. It is clear that Plaintiff's claim is "based [on] inadequate data, relies largely on inference and innuendo and fails to create a genuine issue of fact for trial on any *Monell* claim[.]" *Id.*

Plaintiff's complaint also alleges a failure to supervise or train its deputies. To succeed on such a claim, Plaintiff must prove that: (1) the training or supervision was inadequate for the tasks the officer or employee was performing; (2) the inadequate training resulted from the defendants' deliberate indifference; (3) the inadequacy caused the injury. *Ellis v. Cleveland Municipal School Dist.*, 455 F.3d 690, 700 (6th Cir.

2006). "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the *training in this particular area* was deficient and likely to cause injury." *Miller v. Sanilac Cty.*, 607 F.3d 240, 255 (6th Cir. 2010) (quotation marks and citations omitted).

Plaintiff has presented no evidence of prior instances involving Genesee County failing to train or supervise officers on their use of force procedures involving the TASER or take down procedures. To the extent Plaintiff relies on the above-mentioned list of cases, Plaintiff does not articulate how those cases show a pattern of failure train and supervise on the use of the TASER and takedown procedures. Genesee County provides the use of force training protocols in the record, ECF No. 27-10, but Plaintiff does not engage with them. Nor does Plaintiff refute Defendants' proffering of the individual deputy Defendants' use of force trainings in the record. *See* ECF No. 27-11. Plaintiff has provided no evidence that Genesee County's training was deficient and has failed to refute Defendant's evidence of training. Therefore, Plaintiff has failed to create any genuine issue of material fact for trial on any *Monell* claim based on a failure to train and supervise. Accordingly, Genesee County is entitled to summary judgment on Plaintiff's *Monell* claim.

## IV. Conclusion

Accordingly, Defendant Genesee County's Motion for Summary Judgment is **GRANTED**. The individual Defendants have not moved for summary judgment and claims against the individual officer Defendants therefore survive.  Count I of the Complaint against Defendant Genesee County is **DISMISSED WITH PREJUDICE,** and judgment may be entered in the County's favor as to this Count.  Additionally, the parties have agreed to **DISMISS WITH PREJUDICE** Plaintiff's Count II[7] Gross Negligence, Willful and Wanton Misconduct and Intentional infliction of Emotional Distress and Plaintiff's Count IV[8] Res Ipsa Loquitor.

**IT IS SO ORDERED**.

DATED: July 21, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

---

[7] As mentioned at the outset, this count is incorrectly listed as Count III in Plaintiff's complaint, because the complaint skips over (i.e., does not list) a Count II.

[8] As with Count II, this Count is mislabeled as Count V in Plaintiff's Complaint.